CuRiA, per O’Neaxl, J.
The first and fifth grounds of the plaintiffs motion will alone be considered: the others were either abandoned, or are involved in the first ground, or present naked questions of fact, which the court regard as resolved by the verdict of the jury. I will consider the fifth ground first. Looking to the general terms in which it is set down, and to the manner in which the commissioner of special bail reports his decision, I should be inclined to think the question overruled was competent, and ought to have been answered: for the valuation of property is always *365 matter of opinion. Bat in passing upon the report made by a commissioner of special bail, it is not right that we should decide any point upon a rigid construction. If it be possible, the precise point decided, with its attendant .circumstances, oughtto.be ascertained from the entire statement. On looking through the report, it is plain that Gilchrist was examined as to the value of parts of the assigned estate. He stated the amount of the debts due to the assignors in Mississippi and Alabama: the amount at which the shoe store ih Camden was sold: the value of the Bishopville lands: the amount of notes deposited by Bowen in one of the banks at Camden, and in the hands of Mr. Shannon: and the value of some Alabama lands. All of the property which was susceptible of valuation, and as to which any inquiry was made, he valued. It would seem, therefore, that it could not have been as to the actual value of the assigned estate within his knowledge, that'the witness was about to be examined. The report of his cross examination, after the justice had overruled the question, furnishes, I think, the clue to the ascertainment of the question put and overruled. The witness stated, “ that as to the debtors mentioned in the schedule, he had no knowledge of the solvency of many of the persons who were put down as debtors ; that he had not examined the papers turned over to him.” — 'And therefore it was, I conclude, that he could not give any opinion as to the general value of the assigned estate. In this point of view, the commissioner of special 'bail was right in overruling the question. For if answered one way or the other, it would be a mere guess, and could not be considered as any sort of evidence. Looking to this explanation as the true state of the matter before the commissioner of special bail, the first ground cannot be considered as furnishing any reason for a new trial. But if it was more doubtfql than it is, how the matter .stood before the commissioner of special bail, still; after it is seen that the witness could not have answered from the want of information, the question put to him, the fact that the commissioner overruled it when he ought to have permitted the witness to answer, that he was unable to give any opinion, is no cause why the case should be sent back. We see that the answer would have been nothing — and hence to send back the case would be a merely idle ceremony.
*366 The first ground is really the only important one in the case. — ■ Before I commence the regular discussion of it, I would observe, that until the formation of the firm of C. C. Campbell & Co., Bowen, the prisoner in execution, was not worth a'ny thing. That firm it is now alleged, is insolvent to a great amount; but their assets are either included in the assignment executed by Bowen-and Bishop, or in the schedule filed by Bowen. The bulk of the property and assets covered by the deed’ of assignment, is the private estate of Dr. Bishop. So that in point of fact, instead of the assets of the firm of C. C. Campbell & Co. being diminished by being applied to the payment of Dr. Bishop’s private debts, his estate furnishes a more than ample fund for that purpose, and will contribute la'rgely to the payment of the debts of C. C. Campbell & Co. Their creditors ought not therefore to complain, that Bowen united in the execution of the deed. He was doing them no prejudice — instead of it he was directly bonefitting them. For by the execution of the deed, he was at once bringing Dr. Bishop’s estate, (upon which his private creditors had liens, and which had it .not been for the assignment, they might have sacrificed, and thus have deprived the creditors of C. C. Campbell & Co., of all benefit therefrom,) into a common fund, out of which they in their order might expect payment., According to the case of Niolon v. Douglass and others, 2 Hill. Ch. R. 443, 446, the debtors might legally execute such a deed of assignment as that Which they did : and that the trusts contained in it to pay some creditors in preference to others, did not make it fraudulent and void. The act of 1828, p. 32, undertakes to regulate assignments, “ whenever any debtor shall assign his, or her property, for the benefit of his creditors.” This shows the sense of the legislature, that these voluntary assignments were proper: and when that is followed up by the decision of the Appeal Court, that such an assignment may be upon trusts, preferring in the order of payment one creditor to another, how can that which is thus legalized and made superior to' exception, be considered as an undue preference under the prison bounds act ? It is unnecessary to. examine -this question. The 7th section of the “Act to establish the bounds of prisons or common gaols in this State,” (P. *367 L. 456,) prohibits the discharge of any prisoner, “who within three months before his, or her confinement, or at any time since, has paid or assigned his estate, or any par,t thereof, tó one creditor in preference to.another.” A subsequent part of the same section, characterizes this preference as an “undue preference.”. The assignment in this case, it must be borne in mind, is not to one creditor — it is to assignees, one of whom happens to be a judgment creditor, and who is not preferred beyond the position which his lien gave to him. The deed is not a payment, or assignment of the estate, to one creditor; it is for the payment of all the creditors, in an order established by it. • It is not prohibited by the words of the prison bounds act. Does the trust make it an undue preference of one creditor to another? In Walker v. Briggs, 1 Hill. R., 128, I stated my notion of an undue preference to be, “ such an intentional preferring of one creditor, as may enable him to receive payment and altogether defeat, delay, or hinder, another from being paid.” This is, I still think, a just definition,of an undue preference. To be within it, the preference must be fraudulent : and this is what is said by the subsequent cases. The intentional preference of one to another, so as to altogether defeat, delay ? or hinder, another creditor from being paid, presents all the ingredients which make out a fraud, at either common law, or under the statutes to prevent fraudulent conveyances.
In this case the intentional preference of some creditors to another, cannot be denied: but this is not enough. Was .it so done to defeat, delay, or hinder? It is plain it was not. For the fund provided by the deed, with the other property of the assignors,, may yet pay the plaintiffs. If this should turn out to be the case, there can be no pretence that they have been defeated. It is apparent that the assignors supposed that they had provided ample means for the payment of all their debts. The words of the deed sufficiently indicate this. Does the assignment delay, or hinder, the plaintiffs in the collection of their debts ? ■ Unquestionably it does not. It rather facilitates than delays. For by the deed, assets are placed in the hands- of the assignees, which could- not be reached by the ordinary process of execution. These reasons *368 satisfy me that there was not in law, on the face of the deed of assignment, an undue preference of one creditor to another: and hence, as the jury have negatived its existence on the facts, there is now no pretence to say that it existed.
N Mayrant & W. F. Desaussure, for the motion.
Withers, contra.
The motion for a new trial is dismissed.
Evans, Eakle and Butojek, Justices, concurred.